GRIFFIN, J.
This is an appeal of an order on petition for modification and petition to enforce final judgment, which we affirm in part and reverse in part.
The final judgment of dissolution of the marriage of Candice J. Merting [“Wife”], petitioner below, and James P. Merting [“Husband”], respondent below, was entered on August 26, 1998. Prior to the *992 entry of final judgment, Husband and Wife entered into a marital settlement agreement dated July 81, 1998 [“the Agreement”], and that Agreement was incorporated into the final judgment of dissolution of marriage. This Agreement had at least two peculiar characteristics. First, it contemplated that in order for Husband and Wife to meet them goal of shared parenting of their two minor children, Husband would continue to reside -in the marital residence with Wife -until Three months after the youngest child graduates from high school, at which time he was obliged to leave. This Agreement gave Wife the right of possession of the home and contained elaborate terms concerning which rooms Husband could access and when, who did which chores and how meals would be handled. The Agreement provided that Husband had the right to remain in the marital home under the Agreement unless his behavior- was inappropriate, he caused “undue” -stress to Wife or there were problems relating to the minor children due to the arrangement.
The other unusual thing about the Agreement is that Husband agreed to pay specified child support calculated in the Agreement to be “all the bills and expenses associated with the former marital residence as they have been customarily incurred in the past.” These expenses are listed in detail and totaled $4,731.69. Additionally, Husband'agreed to pay medical and hospitalization expenses for the children, life insurance and college. The Agreement recognizes that this agreed-to child support exceeded the child support guidelines. Especially odd was the fact that, given Husband’s income, it was beyond his ability to pay.
The Agreement also made provision for alimony as follows:
11. PERMANENT PERIODIC ALIMONY: As long as the Wife resides in the former marital home, the Husband agrees to pay all the Wife’s expenses and bills consistent with past expenses and bills as set forth in the Wife’s Financial Affidavit dated January 30, 1998 including medical insurance, household expenses and automobile expenses as set forth in Paragraph 7 above as well as the following monthly expenses ...
The Wife shall also receive incidental benefits of use of the former marital residence, other monies spent .in the household and automobile expenses as set forth in Paragraph 7 above. The parties agree that alimony is not taxable to the Wife and shall not be deductible from the Husband’s income.
On the first day of the first month following the sale of the former marital residence pursuant to the terms as set forth in Paragraph 12 below, the Husband shall pay permanent periodic alimony to the Wife in the minimum amount of $2,000.00 per month and $2,000.00 shall continue to be payable from the Husband to the Wife on the first day of each and every month thereafter until the Wife remarries or dies or the death of the Husband. In the event the Husband’s gross income exceeds $100,000.00 in any given year, alimony shall automatically be increased by 25% of the Husband’s income that is greater than $100,000.00, said 25% shall be payable to the Wife in twelve equal monthly installments during the following year in addition to the $2,000.00 permanent periodic alimony as set forth above.
The total alimony to be paid by Husband per month as set forth above was $790.00.
Paragraph 12 of the Agreement referred to in the above provisions concerned equitable distribution:
12. EQUITABLE DISTRIBUTION:
As and for equitable distribution of the *993 marital assets of the parties, the parties agree as follows:
(a) Marital Home: The marital residence of the parties is and has been located at 10823 Crescent Lane, Cler-mont, Florida 34711. The parties agree to remain joint owners of said residence and agree to put said residence on the market to sell at a mutually agreeable price three months after the graduation of the youngest child from high school. The Husband shall pay all expenses relating to said residence until said residence is sold....
The final judgment provided that “The Martial Settlement Agreement dated July 31st 1998 is hereby approved and incorporated into this Final Judgment of Dissolution of Marriage by reference, and the parties are ordered to comply with same.”
It should be noted that prior to the signing of the Agreement in July 1998 and the entry of the final judgment in August 1998, Husband filed a family law financial affidavit which showed his current income was $26,000.00 per year ($2,000.00 per month plus commissions) with an automobile allowance of $250.00 per month and up to $125.00 per month for a cell phone. Husband also stated his net income for the last calendar year, 1997, was $41,572.36.
The record suggests that Husband moved out of the marital home in January 2000. Husband then filed an initial petition for modification of the final judgment, although the record before us does not reflect the date of the petition. In his letter dated September 26, 2000, explaining his decision to deny the petition, the judge said:
[The marital settlement agreement] called for child support in the amount of $4,731.61 [sic] per month, alimony of $790 per month along with other financial obligations. The alimony is without taxable consequence. Suffice it to say that every provision in the Final Judgment is heavily weighted in favor of [Wife]. At the time of entry into the marital settlement agreement [Husband] was unrepresented. The agreement contemplates payments for [sic] greater than [Husband’s] income and ability to pay. [Husband] seeks relief from that judgment.
[Wife] wins. She has objected to granting [Husband] any relief. [Husband] has the burden of proving a substantial change in circumstances. The evidence was insufficient to carry this burden. At the time [Husband] entered into the marital settlement agreement he lacked the ability to meet his financial obligations. His income at the time he entered into the marital settlement agreement was less than his current income. While he was living in the marital residence at the time the agreement was executed, his leaving that residence was contemplated within the agreement. [Husband] made a bad deal. The agreement could well be considered unconscionable. However, the law is clear that the court is not authorized to rewrite or renegotiate the agreement. Only the parties can do that.
[Wife] realizes [Husband] does not have the ability to comply with the court ordered obligations. [Husband] is significantly in arrears however, [Wife] has not sought to having [sic][him] held in contempt of court. Instead of attempting to negotiate some workable compromise, [Wife] has simply objected to [Husband’s] Petition for Modification. The result is a situation where [Husband] is unable to meet his own basic needs. How long [Husband] can maintain is speculative. The court hopes this doesn’t get to the point where [Husband] gives up and leaves the jurisdiction. Certainly [Wife] and the parties *994 [sic] children will not benefit if this occurs. However, the court cannot protect the parties from their own choices and decisions.
On April 5, 2002, Husband filed a second petition for modification of the final judgment of dissolution of marriage. Husband alleged that there had been a substantial change in circumstances warranting a modification because Wife had sold the marital home on November 1, 2001, and, with the sale of the house, Wife no longer had the household expenses set forth in the Agreement. Also, although Husband’s income level at the signing of the Agreement was projected to be $75,000.00 per year, through no fault of his own, he never reached that income level, and Wife was now employed full-time. Finally, one of the two minor children had reached the age of majority. Husband requested child support be modified pursuant to the guidelines for the payment of only one child, and he requested a downward modification of alimony.
The order on Husband’s petition for modification and Wife’s petition to enforce final judgment was denied in part and granted in part on February 28, 2003. The court made the following findings:
1. A Final Judgment of Dissolution of Marriage (“Final Judgment”) was entered on August 26, 1998, which incorporated a July 31, 1998 Marital Settlement Agreement (“MSA”) and which required [Husband] to pay child support and alimony under certain terms and conditions.
2. The MSA provides that the child support will not be paid in accordance with the Uniform Child Support Guidelines, but would be payable based on certain monthly household obligations of [Wife] in the amount of $4,731.69 and until the youngest child graduated from high school or until said minor child attains the age of 19, whichever occurs first.
4.[1] The MSA and Final Judgment also require [Husband] to pay $790.00 a month until the former marital home is sold, after which [Husband] must pay permanent periodic alimony to [Wife] in the amount of $2,000.00 per month, subject to increases if [Husband’s] income exceeds $100,000.00 a year.
5. When [Husband] agreed to the terms of the MSA his income was $25,000.00 per year, which was insufficient to meet the financial obligations that he had agreed to in the MSA.
6. [Husband] previously filed a Supplemental Petition to Modify the Final Judgment (“Supplemental Petition”), which was denied because, inter alio, [Husband] was earning more wages at the time of filing his Supplemental Petition then [sic] he did at the time of signing the MSA and, because the Court has no authority to renegotiate or rewrite parties’ agreement or save him from what [Husband] claims to be an unfair agreement.
7. [Husband] has failed to pay the required child support or alimony and is in arrears with his child support obligations in the amount of $47,385.92 and in arrears with his alimony obligations in the amount of $36,590.00.
8. [Husband] argues that a significant change in circumstances has occurred requiring a reduction in child support and alimony because in January 2003 his employment with Wayne Automatic, where he was earning approximately $86,000.00 a year, was terminated and he is presently only earning approximately $56,000.00 a year.
*995 9. [Husband’s] reduction in income, however, is not a significant change in circumstances because he is presently-earning more than twice the amount he was earning at the time he signed the MSA and at the time his Supplemental Petition was denied.
10. [Husband] further argues that a significant change in circumstances has occurred because he is no longer residing in the former marital home, and because the monthly child support obligation he agreed to in the MSA was based on the understanding that [Husband] would continue to reside in the former marital home.
11. [Husband], however, has not resided in the former marital home since January 2000, which was approximately ten months before the court denied [Husband’s] Supplemental Petition. Therefore, as a matter of law, [Husband’s] vacation of the marital home does not constitute a significant change in circumstances.
12. [Wife’]s sale of the former marital home in March 2002, is a substantial change in circumstances, because by relocating, [Wife] has been able to reduce her monthly household obligations to $3,996.00 from April 1, 2002 to February 2003 and further reduce the same obligations to $3,596.00 as of March 1, 2003.
13. In addition, [Wife’s] sale of the former marital home requires that [Husband’s] monthly alimony be increased to $2,000.00 a month as provided in the MSA.
14. As to whether or not the alimony is income to [Wife] and an income tax deduction to [Husband], the clear language of the MSA states that alimony is not taxable to [Wife] and shall not be deductible from [Husband’s] income.
* * *
17. [Husband] has no ability to pay attorneys’ fees.
Based on these findings, the lower court ordered that child support obligations be reduced to $3,996.00 per month from April 1, 2002 to February 1, 2003, and he received ten months’ credit for the reduction. His child support obligations were also reduced to $3,596.00 per month commencing March 1, 2003. Husband’s alimony obligation was increased to $2,000.00 per month retroactive to April 1, 2002.
Husband argues on appeal that, although the lower court found that there had béen a substantial change in circumstances due to the fact that Wife sold the marital home, had become employed, and the oldest child had reached the age of majority, the lower court erred in failing to order support in accordance with the child support guidelines. See Bunassar v. Diaz, 804 So.2d 487 (Fla. 3d DCA 2001).
Wife contends that the lower court correctly upheld the Agreement incorporated into the final judgment by ordering child support to be paid in accordance with Wife’s current monthly household expenses rather than the uniform child support guidelines and by requiring $2,000.00 in alimony as provided in the Agreement after sale of the marital home. Wife emphasized that the trial court had ruled in 2000 that the Agreement between the parties was enforceable and could not be remade, and that this unappealed order was controlling. This case does not involve “remaking” the Agreement, however, but ascertaining what it means and how it applies to the changed circumstances. We consider this question de novo, and we conclude that Husband is correct.
The provision in the Agreement regarding child support provided:
*996 E. SUPPORT FOR THE MINOR CHILDREN:
It is the goal of the parties for [Wife] and [Husband] to reside amicably, however, separately in the former marital residence ... in order for both parties to fully participate in shared parenting. To accomplish this goal, [Husband] shall pay child support in excess of the child support guidelines. [Husband] shall pay all the bills and expenses associated with the former marital residence as they have been customarily incurred in the past.
[[Image here]]
Child support shall continue to be payable as set forth above until the youngest minor child graduates from high school or until said minor child attains the age of nineteen, whichever event shall first occur.
The trial court correctly found that the sale of the marital residence was a substantial change in circumstances, but the trial court incorrectly adjusted child support based on Wife’s testimony of her current monthly expenses since sale of the home. The Agreement does not, however, provide for what happens to the child support upon sale of the former marital residence before the date referenced in the Agreement — three months after the youngest child’s eighteenth birthday. The Agreement appears to contemplate only that child support will be based on the financial assumptions tied to Wife’s residing in the marital home until after the youngest child’s graduation. Although the parties addressed the sale of the home in the Agreement as it affected alimony, the parties did not address the sale of the home as it concerned child support. Plainly, this was because the marital home was not to be sold until no more child support was payable. By simply substituting Wife’s current living expenses in the new home for the expenses relating to the marital home, the court did exactly what Wife urged could not,. be done — the court remade the Agreement. Because there was no agreement by the parties as to the amount of child support in the event the home was prematurely sold, the modification should have been determined based upon the ehild support guidelines in section 61.30, Florida Statutes (2002). See Bunassar. We accordingly remand to the lower court with instructions to calculate Husband’s child support obligations pursuant to the guidelines.
Husband also contends the trial court erred in modifying alimony upward. He urges that, from reading the entire Agreement, it is clear that Wife’s alimony was to increase to $2,000.00 upon sale of the marital home after the youngest child reached the age of majority. Once the youngest child reached the age of majority, there would be no more child support, the house would have been sold, and the $2,000.00 would be for Wife’s permanent support. Husband urges that the trial court’s conclusion that, by the simple act of selling the home, Wife became entitled to an increase in alimony was illogical. He asserts that, under the Agreement, the alimony should not increase from $790.00 to $2,000.00 per month until such time as the child support obligation terminates. We agree. Under the Agreement, Husband is to continue paying alimony in the amount of $790.00 per month, plus child support, until the youngest child has graduated from high school, at which time it will increase to $2,000.00 per month.
AFFIRMED in part; REVERSED in part and REMANDED.
SHARP, W., and MONACO, JJ., concur.

. There is no paragraph 3 in the order, which appears to be a typographical error.